IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| TRINA M. TRUJILLO and DAVID TRUJILLO,<br><br>Plaintiffs,<br><br>vs.<br><br>ANSON STREET, LLC, NEW PENN FINANCIAL, LLC d.b.a. SHELLPOINT MORTGAGE SERVICING, and DOES 1 THROUGH 100,<br><br>Defendants. | ORDER<br>AND<br>MEMORANDUM DECISION<br><br>Case No. 1:18-cv-00134-TC |

Plaintiffs Trina Trujillo and David Trujillo filed suit against Defendants Anson Street, New Penn Financial, and Shellpoint Mortgage Servicing (collectively, Defendants) for allegedly violating two federal consumer protection laws—the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq., and the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 et seq.  The Defendants have moved to dismiss the case with prejudice under Federal Rule of Civil Procedure 12(b)(6).  For the reasons set forth below, the court grants the Defendants' motion but will allow the Trujillos to move to amend their RESPA claim.

1

# BACKGROUND[1]

This case arises from a $35,000 home equity loan that the Trujillos executed on June 25, 1999, with AVS Financial Corporation. The loan was later assigned to Anson Street (which, as of January 26, 2019, no longer holds the note) and serviced by Shellpoint Mortgage Servicing.

In January of 2015, the balance of the loan was $28,727.45. In October of 2015, the Trujillos sent Shellpoint a "qualified written request" (QWR) pursuant RESPA. The Act defines a QWR as "a written correspondence" that "(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). A mortgage servicer must confirm receipt of a QWR and, within thirty days, investigate whether any errors exist and respond with its findings. Id. § 2605(e)(2).

According to the Trujillos, Shellpoint's response was deficient. Shellpoint "provided an incomplete payment history," and "did not provide an outline of all payments and fees, charges, [and] credits by all previous servicers from June 25, 1999." (Compl. ¶ 10, ECF No. 1.) Additionally, Shellpoint "claim[ed] the principal balance on the Mortgage was now roughly $49,672.88, which [was] an increase of over $20,945.43" from the start of 2015. (Id. ¶ 11.)

---

[1] To evaluate the Defendants' motion to dismiss, the court accepts the well-pleaded factual allegations in the complaint as true, and views the complaint in the light most favorable to the Trujillos. While the court would typically construe a complaint filed pro se with additional liberality, Ogden v. San Juan Cnty., 32 F.3d 452, 455 (10th Cir. 1994), the Trujillos admitted at the hearing that the complaint was largely drafted by an entity called "The Fresh Start Firm, LLC." Because of this "ghost writing," the complaint is not entitled to the liberal construction typically afforded to pro se pleadings. See Duran v. Carris, 238 F.3d 1268, 1272–73 (10th Cir. 2001).

In support of these allegations, the Trujillos attached to the complaint a "Loan History Summary," which lists transactions from 2007 to 2015. (Ex. 1 to Compl., ECF No. 1-1.) They also attached Shellpoint's three-page QWR response letter. (Ex. 2 to Compl., ECF No. 1-2.) The response letter states,

> Shellpoint's records indicate that the loan was discharged through a Chapter 7 Bankruptcy. Shellpoint is not attempting to collect the debt, as your client[s'] [the Trujillos'] personal liability was discharged. However, the mortgage lien survived the discharge and Shellpoint is continuing to service the loan according to the original agreement and protect the creditor's rights in the associated property. Additionally, our records show that at the time of the discharge, your clients intended to retain the property and continued making payments through April 2011.
>
> . . .
>
> As of the date of this communication, the amount to release the lien is $49,672.88 which includes interest, and fees.

(Id. at 2 (emphases omitted).) The letter concludes by stating that Shellpoint was "not able to determine that any error has occurred." (Id. at 3.)

The Trujillos allege that they made several unsuccessful attempts to obtain an accounting of the loan and verify the $49,672.88 balance. They also claim that Shellpoint "made multiple attempts to collect on the debt between 2015 and 2017, without validating the balance as stated within the debt validation process under the FDCPA, 15 U.S. Code § 1692g." (Compl. ¶ 13.)

The Trujillos bring four claims for relief—two under the FDCPA and two under RESPA. The Defendants have moved to dismiss the Trujillos' complaint on two grounds: first, that the Trujillos' FDCPA claims are barred by the Act's one-year statute of limitations; and second, that the complaint does not contain sufficient factual allegations to state plausible FDCPA and RESPA claims.

3

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When deciding a Rule 12(b)(6) motion testing the adequacy of a plaintiff's factual allegations, the court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

Allegations of fraud must meet the heightened pleading standard set forth by Federal Rule of Civil Procedure 9. A plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The complaint must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." Koch v. Koch Indus., Inc., 203 F.3d 1202, 1236 (10th Cir. 2000) (quoting Lawrence Nat'l Bank v. Edmonds (In re Edmonds), 924 F.2d 176, 180 (10th Cir. 1991)).

While "the court must liberally construe the pleadings and make all reasonable inferences in favor of the non-moving party," Brokers' Choice of Am., Inc. v. NBC Universal, Inc., 861 F.3d 1081, 1105 (10th Cir. 2017), statute of limitations defenses may nonetheless be resolved at the motion to dismiss stage "when the dates given in the complaint make clear that the right sued upon has been extinguished." Sierra Club v. Oklahoma Gas & Elec. Co., 816 F.3d 666, 671 (10th Cir. 2016) (internal quotation omitted).

## DISCUSSION

### I. FDCPA Claims

The Trujillos bring two claims for relief under the FDCPA. Claim 1 challenges Shellpoint's efforts to collect on the debt without verifying the amount and the original creditor as required by 15 U.S.C. § 1692g. Claim 3 lists a number of other allegedly illegal actions:

> Defendants violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person.
>
> Defendants violated 15 U.S.C. § 1692e(2) by falsely representing the character, amount, or legal status of any debt.
>
> Defendants violated 15 U.S.C. § 1692e(8) by communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.
>
> Defendants violated 15 U.S.C. § 1692e(10) by the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.
>
> Defendants violated 15 U.S.C. § 1692f by using unfair or deceptive means to collect a debt.

(Compl. ¶¶ 55–59.)

The court begins with the FDCPA's statute of limitations, which requires that a claim under the Act be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). The operation of the statute of limitations is currently the subject of a circuit split. The Third Circuit follows an occurrence rule. Based on the plain language of the statute, a claim accrues when the violation occurs. Rotkiske v. Klemm, 890 F.3d 422, 428 (3d Cir. 2018) (en banc), cert. granted, 139 S. Ct. 1259 (2019). In contrast, the Fourth and Ninth Circuits follow a discovery rule. A claim accrues when a plaintiff "knows or has reason to know of the

injury that is the basis of the lawsuit." Lembach v. Bierman, 528 F. App'x 297, 302 (4th Cir. 2013) (citing Mangum v. Action Collection Serv., Inc., 575 F.3d 935, 939–941 (9th Cir. 2009)). The Tenth Circuit has not yet chosen a position.

The court need not resolve the circuit split. The Trujillos have not pled any FDCPA violation occurring on or after October 19, 2017 (within one year of the filing of their complaint). Nor have they pled the timely discovery of injuries caused by an FDCPA violation.[2] The complaint contains just one allegation to suggest an FCDPA violation within the time allowed by the statute of limitations: that Shellpoint "has made multiple attempts to collect on the debt between 2015 and 2017" without validating the loan balance. (Compl. ¶ 23; see also id. ¶ 51 (same).) But this single allegation is conclusory. There are no facts from which the court can infer that Shellpoint (or any other Defendant) took a specific action to collect a debt after October 19, 2017, or otherwise violated the FDCPA in that time frame. The Trujillos' FDCPA claims must be dismissed.

In their opposition brief, the Trujillos request leave to amend their complaint to fix any deficiencies. While leave to amend under Federal Rule of Civil Procedure 15 should be freely given, "[a] district court may refuse to allow amendment if it would be futile." Anderson v. Suiters, 499 F.3d 1228, 1238 (10th Cir. 2007). At the hearing on the Defendants' motion to dismiss, Ms. Trujillo stated that the most recent effort to collect on the loan occurred in 2016,

---

[2] In response to the Defendants' statute of limitations argument, the Trujillos assert that they "were not aware of their claims until consulting knowledgeable third parties." (Pls.' Opp. Br. at 5, ECF No. 12.) But under the discovery rule, knowledge of the injury, not knowledge of the law, triggers the FDCPA's statute of limitations. Lembach, 528 F. App'x at 302.

and that she had no basis to otherwise assert a timely claim. Based on her representation, the court finds that amending the FDCPA claims would be futile and will not grant the Trujillos leave to do so. The FDCPA claims are dismissed with prejudice.

## II.     RESPA Claims

In addition to their claims under the FDCPA, the Trujillos bring two claims under RESPA. The first, Claim 2, challenges Shellpoint's QWR response as incomplete and inaccurate. The second, Claim 4, seems to challenges the failure of AVS Financial Corporation (which is not a defendant) to notify the Trujillos of the assignment, sale, or transfer of the debt to Anson Street.

As an initial matter, the Trujillos have failed to plead any facts to suggest that $49.672.88 loan balance was inaccurate, let alone a result of fraud. While the loan balance increased sharply in 2015, the complaint does not contain allegations that suggest wrongdoing by any of the Defendants.

Additionally, the Trujillos have failed to plead damages resulting from a RESPA violation. RESPA allows plaintiffs to recover "only for actual damages arising from a RESPA violation and for statutory damages arising from a pattern or practice of violations." Toone v. Wells Fargo Bank, N.A., 716 F.3d 516, 523 (10th Cir. 2013) (citing 12 U.S.C. § 2605(f)(1)(A), (B)). Consequently, "plaintiffs must plead actual damages stemming from the failure to respond to requests or a pattern or practice of misconduct." Id.

The Trujillos' complaint contains the following allegation of damages:

> Plaintiffs were damaged as a result of Defendant's failure to respond since Plaintiffs made numerous mortgage payments to a fraudulent loan balance. As a result of such payments, Defendant has been unjustly enriched while Plaintiffs have incurred court fees to enforce

> their legal rights and have suffered slander to her representation [sic]
> due to the fact that an illegitimate loan balance has been attributed
> and reported to credit reporting agencies and bureaus.

(Compl. ¶ 40.)

The allegation is lacking in at least two ways. First, as discussed, the complaint does not provide any indication the loan balance was fraudulent. Second, the Trujillos have not plausibly linked their mortgage payments to the alleged RESPA violations—that is, that they made mortgage payments as a consequence of the allegedly deficient QWR response or the alleged absence of an affidavit of debt. Without plausible allegations of damages, their claims under RESPA must be dismissed.

The Defendants ask that the RESPA claims, like the FDCPA claims, be dismissed with prejudice. They rely on two documents referred to, but not attached to, the complaint: the Trujillos' request letter, and Shellpoint's complete response to it—approximately 100 pages of financial records Shellpoint attached to its response letter. The Defendants argue that the request letter does not meet the statutory definition of a QWR because it does not contain a "statement of reasons" required by 12 U.S.C. § 2605(e)(1)(B)(ii). They also argue that the full QWR response provides conclusive evidence that no RESPA violation occurred.

When deciding a Rule 12(b)(6) motion, a court may consider "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." Toone, 716 F.3d at 521 (quoting Gee v. Pacheco, 627 F.3d 1178, 1186 (10th Cir. 2010)). But while the court will take judicial notice of the QWR and QWR response, these documents do not justify dismissal with prejudice. First, the court cannot

conclude as a matter of law that the Trujillos' request letter was not a QWR.  Their letter is clearly labeled as a QWR, and, judging by the response, Shellpoint seemed to treat it as such.

Second, the court cannot be certain that Shellpoint's QWR response was, in fact, complete and accurate.  While the court does not question the authenticity of the QWR response, the court has no means, at the pleading stage, of testing the <u>accuracy</u> of the response.  It may still be true that Shellpoint "did not provide an outline of all payments and fees, charges, [and] credits" on the debt.  (Compl. ¶ 32.)

Additionally, the QWR response does not conclusively resolve the Trujillos' claim that the Defendants failed to provide notice of the debt's reassignment.  At the hearing on the motion to dismiss, counsel for Defendants cited to a 2014 "Notice of Transfer of Servicing" as evidence of proper notice.  (Ex. 2 to Defs.' Request for Judicial Notice, ECF No. 10-2, at 102–03.)  But the document only indicates a change of loan servicers, not a change of noteholders.

Accordingly, the court will dismiss the Trujillos' RESPA claims without prejudice.  The Trujillos may file a motion for leave to amend their complaint, with a proposed amended complaint, within twenty-eight days from the date of this Order.  In the meantime, the court strongly encourages the parties to meet to resolve the case without further litigation.

Should the Trujillos seek leave to amend their complaint, they must either retain competent counsel to draft and sign their filings, or draft the motion for leave and the proposed amended complaint themselves, without substantial assistance by an attorney.  <u>See</u> <u>Duran</u>, 238 F.3d at 1273.

**ORDER**

For the foregoing reasons, the Defendants' Motion to Dismiss (ECF No. 9) is GRANTED IN PART.  The court dismisses the FDCPA claims (Claims 1 and 3) with prejudice, and the RESPA claims (Claims 2 and 4) without prejudice.  The Trujillos may file a motion for leave to amend their complaint, along with a proposed amended complaint, within twenty-eight days from the date of this Order.

DATED this 25th day of June, 2019.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge